UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LESLIE L. SCHAFER,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, ET AL.,

    Defendants,

and

WOLVERINE TECHNICAL STAFFING, INC.,

    Defendant/Cross-Plaintiff,

v.

BASIC COBRA GROUP ADMINISTRATOR,

    Defendant/Cross-Defendant,

and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant/Cross-Plaintiff,

v.

WOLVERINE TECHNICAL STAFFING, INC.,
ET AL.,

    Defendants/Cross-Defendants
_____/

Case No. 08-13842

District Judge Arthur J. Tarnow

Magistrate Judge R. Steven Whalen

## REPORT AND RECOMMENDATION

    Before the Court are the following motions:

    (1) Defendant Wolverine Technical Staffing, Inc.'s ("Wolverine") motion for summary judgment against State Farm Mutual Automobile Insurance Company ("State Farm") [Doc. #52].

    (2) Defendant Wolverine's motion for summary judgment against Plaintiff Leslie L. Schafer ("Schafer") [Doc. #53].

(3) Defendant Basic Cobra Group Administrator's ("Basic Cobra") motion for summary judgment [Doc. #75].

All motions have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend as follows:

(1) That Defendant Wolverine's motion against State Farm [Doc. #52] be DENIED.

(2) That Defendant Wolverine's motion against Schafer [Doc. #53] be DENIED.

(3) That Defendant Basic Cobra's motion for summary judgment be GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Although this case has become somewhat complex, it started out in Wayne County Circuit Court as a suit by Plaintiff Leslie Schafer against her automobile insurer, Defendant State Farm, for no-fault benefits arising out of an automobile accident. Also named as a Defendant in the state case was Blue Cross Blue Shield of Michigan ("BC/BS"). BC/BS was dismissed and Basic Cobra was added, whereupon Basic Cobra removed the case to this Court based on federal question jurisdiction. Plaintiff Shafer then dismissed Basic Cobra, although Basic Cobra remains as a cross-defendant in regard to cross-claims brought against it by Wolverine. State Farm also has pending cross-claims against Wolverine.

The underlying facts may be summarized as follows. State Farm was Schafer's automobile insurer. BC/BS was her health insurance provider, by virtue of a policy her husband, Christopher, had through his employer, Wolverine. Ms. Schafer was suffered injuries in an automobile accident in 2005, and made a claim to State Farm. According to her first amended state court complaint, in 2007, State Farm either refused to make payments or discontinued making payments for her necessary medical care arising out of the accident.[1]

On May 7, 2007, Christopher Schafer lost his employment with Wolverine, but he elected to continue health insurance through the Consolidated Omnibus Budget Reconciliation Act of 1985

---

[1] The merits of the underlying first-party PIP case are not before the Court in these motions.

("COBRA"). Basic Cobra was the administrator for COBRA benefits for Wolverine's former employees. On June 30, 2007, Schafer's COBRA benefits, which also covered Plaintiff Leslie Schafer, expired due to non-payment of the premium. On August 22, 2007, Basic Cobra told Wolverine to terminate Schafer's coverage for non-payment. On August 24, 2007, Wolverine sent BC/BS a termination form. Indicating that the termination could only go back 30 days from the request, BC/BS terminated Schafer's coverage as of July 24, 2007.

Mr. Schafer alleges that sometime in mid-September of 2007, he asked Wolverine about reinstating his COBRA benefits. Wolverine contacted Basic Cobra, which informed it of the amounts that would be required to reinstate the policy. Schafer tendered that amount to Wolverine on or about October 9, 2007. On that date, Kari Harling, the CFO of Wolverine, gave Christopher Schafer a letter/receipt (*See* Exhibit C to State Farm's Response, Doc. #57), stating as follows:

"Chris–

This letter is to confirm that we received two checks from you today to cover your insurance premiums from 7/24/07 – 10/31/07.

Check # 6469 - $3,500.00
Check # 8890 - $324.33"

At her deposition, Plaintiff Schafer testified that on October 9, 2007, she was informed that upon payment of these amounts, she would be covered by COBRA through October 31, 2007:

"And I remember paying them in two checks because we had to borrow the money, and we were informed – because we knew I had to have another surgery in October, and we were informed that we would be covered through, I think it was, October 31st because I didn't know that I was going to be back in November, so we just, I think, paid premiums through October 31st." Exhibit B to State Farm's Response, Doc. #57.

Plaintiff testified that she "took [this] to mean that they [Wolverine] had paid our premiums and we were covered." *Id.*, Exhibit D. Plaintiff's husband, Christopher Schafer, received a letter from Basic Cobra dated December 7, 2007, stating that COBRA coverage had lapsed as of October 31, 2007. The letter, Exhibit F to State Farm's Response, Doc. #57, reads in pertinent part:

"Based upon our records, we have not received a full premium payment within [the] designated time frames and therefore, have terminated your coverage back to the last

> day for which premiums were applied. Effective midnight on October 31, 2007, you coverage has been terminated from our group plan(s).
>
> All insurance claims with a treatment date on or prior to 10/31/2007 will be paid in the normal process. Claims with treatment dates after the termination date will be your responsibility, receiving no insurance reimbursement."

Plaintiff underwent two surgeries at William Beaumont Hospital, in October and November of 2007, under the belief that she was insured through COBRA. She states that at no time before the surgeries was she explicitly informed that she was *not* covered. However, notwithstanding (a) that Basic Cobra informed Wolverine of the amount necessary to reinstate coverage, and Wolverine conveyed that information to Plaintiff, (b) that Wolverine accepted payment and issued Plaintiff a receipt stating that the payment was "to cover your insurance premiums from 7/24/07 – 10/31/07," and (3) Basic Cobra sent Plaintiff a letter on December 7, 2007 indicating that her coverage was terminated as of October 31, 2007, BC/BC in fact elected not to reinstate Plaintiff's coverage after July 24, 2007, because more than 30 days had passed since coverage elapsed.[2]

State Farm, the Defendant in the original no-fault action, filed a cross-claim against Wolverine for (a) indemnification in the event that State Farm is found liable for medical bills arising out of the automobile accident, (b) promissory estoppel, based on "equitable subrogation" of Plaintiff's claim against Wolverine, and (c) breach of express and/or implied contract, also based on equitable subrogation [Doc. #s 26, 43]. Wolverine's motion for summary judgment against State Farm [Doc. #52] addresses those claims, and its motion against Schafer [Doc. #53] address her claim based on promissory estoppel.[3]

---

[2] There does not appear to be a dispute as to whether BC/BS had the discretion to not reinstate coverage after the 30-day period. Thus, even if BC/BS's decision was unconscionable, it is not actionable.

[3] Specifically, Plaintiff alleges as follows against Defendant Wolverine in her First Amended Complaint [Doc. #1]:

> "22. However, prior to being advised that there was no Blue Cross medical insurance coverage, and in reliance upon the Defendants, Wolverine and/or Basic Cobra having accepted the premiums and assuring Plaintiff that the coverage was in force through October 31, 2007, Plaintiff submitted herself to an orthopedic

-4-

State Farm also filed a cross-claim against Defendant Basic Cobra [Doc. #44], alleging the same claims for indemnification, promissory estoppel breach of contract and equitable subrogation. Basic Cobra's motion for summary judgment [Doc. #75] addresses those claims. State Farm has not filed a response to Basic Cobra's motion.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford &*

---

surgeon for more surgery to treat accident-related conditions which were afflicting her, and payment for which was being denied by Defendant State Farm...."

*Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. DISCUSSION

#### A. Wolverine's Motions against State Farm and Plaintiff [Doc. #s 52 and 53]

##### 1. Plaintiff Leslie Schafer

Plaintiff Schafer claims that Wolverine is liable for payment of medical expenses because she relied on Wolverine's representations–express or implied–that she was covered under COBRA in October of 2007. State Farm claims that because Schafer's policy provided for coordinated benefits, which would place its liability for payment of medical expenses secondary to any medical insurance, it may latch onto Plaintiff's claims against Wolverine through the mechanism of subrogation. But while the case has taken on some procedural complexity, the crucial question underlying both motions is simple: Are there genuine issues of material fact as to whether Wolverine made a promise or representation to the Plaintiff that she was covered by COBRA, and did the Plaintiff reasonably rely on that promise or representation when she went ahead with her surgeries? The answer to that question is "yes."

Wolverine correctly cites *Novak v. Nationwide Mutual Ins. Co.*, 235 Mich.App. 675, 686-687, 599 N.W.2d 546 (1999), for the elements of a promissory estoppel claim: "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promise, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." However, Wolverine misapplies those factors.

As to whether a promise was made, Wolverine relies heavily on the fact that it was BC/BS, not Wolverine, that had the authority to reinstate coverage or waive the 30-day grace period set forth

in 29 U.S.C. § 1162(2)(C). Wolverine also argues that it is undisputed that prior to her surgeries, Plaintiff never had any communication with BC/BS or Basic Cobra. Those facts are irrelevant. Plaintiff has no claims against BC/BS or Basic Cobra, and hence does not need to show that those entities made promises to her. And if Wolverine *did* make representation to that she was covered, it does not matter that she, as a layperson, was unfamiliar with the statutory intricacies of ERISA or unaware that BC/BS was the ultimate decision-maker.

There is evidence, and hence a question of material fact, that Wolverine indicated to Plaintiff that she was covered. While Wolverine argues that Kari Harling's October 9, 2007 letter does not explicitly say "you are covered," this at best states an ambiguity, and a reasonable trier of fact could interpret the language that the two checks were to "cover your insurance premiums from 7/24/07 – 10/31/07" as a representation or promise that in fact Plaintiff was insured for that period. Indeed, even Basic Cobra thought that Plaintiff was covered through October 31, as evidenced by its letter of December 7, 2007. Moreover, Mr. Schafer testified that Ms. Harling told him that he "had to have the first payment by a particular time because I was running short." *Christopher Schafer Deposition*, Doc. #57, Exhibit E, pp. 14-17. In effect, Ms. Harling said, "Get the payment here in time and you'll be O.K." At least so a trier of fact could reasonably find.

As to the second element–whether Wolverine should reasonably have expected Plaintiff to take some action as a result of its representations–why would a person go to this length, to drive to Ann Arbor to hand-deliver over $3,000 for medical coverage between October 9 and October 31, if she did not plan on using it that month? People don't buy health insurance for their health, they buy it for their sickness. Once Plaintiff paid the premium under these circumstances, thinking the policy was reinstated, a trier of fact could logically infer that Wolverine would reasonably believe that she intended to act on her belief by seeking medical treatment.

As to the third factor, there is clearly evidence that Plaintiff in fact underwent surgeries in reliance on Wolverine's representations. By October of 2007, she was aware that State Farm was washing its hands of her medical claims, and that she therefore had no recourse but to have COBRA

reinstated. Believing that it was reinstated, she went ahead with the surgeries.[4]

Therefore, Wolverine is not entitled to summary judgment of Plaintiff's promissory estoppel claim.[5]

In its response [Doc. #57], State Farm contends that the first amended complaint also contains an "implied contract" claim, based on the same facts and arguments regarding the promissory estoppel claim. It does not, and such claim has not been pled. In addition, "promissory estoppel and implied contract are separate and distinguishable claims. An implied contract does not necessarily arise out of the facts that lead to a promissory estoppel claim...." *Lee v. University of Michigan-Dearborn*, 2009 WL 1362617, *3 (Mich.App. 2009). In fact, promissory estoppel is an exception to general contract principles in that it permits enforcement of a promise that may have no consideration. *State Bank of Standish v. Curry,* 442 Mich. 76, 96, 500 NW2d 104 (1993). It is not for the Court to discover and rationalize the basis for a claim that has not been clearly raised. *Mudge v. Macomb Co.,* 458 Mich. 87, 105, 580 N.W.2d 845 (1998). Therefore, to the extent that Plaintiff (or State Farm) now asserts that an implied contract claim has been pled, that claim is subject to dismissal.

## 2.  State Farm

Turning now to State Farm's cross-claims, its claim for indemnification fails on legal grounds. Under Michigan law, a duty to indemnify may be created in three ways:

---

[4] In its brief in response to Wolverine's motion for summary judgment, State Farm confirms that it "clearly communicated to Plaintiff that it would not pay for the surgeries, before the surgeries even took place." *State Farm's Brief*, Doc. #56, p. 9.

[5] On the basis of Kari Harling's letter of October 9, 2007, Wolverine could argue that even if it is liable on the basis of promissory estoppel, its liability is limited to medical costs incurred prior to October 31, 2007, and would not include the Plaintiff's November, 2007 surgery. However, if Plaintiff's COBRA coverage lapsed on October 31, she would have been entitled to a 30-day grace period to reinstate. 29 U.S.C. § 1162(2)(C). However, if she learned during November that BC/BS had declined to cover her even during October–and there is an unresolved question of fact as to whether she did–then any attempt to take advantage of a 30-day grace period during November would have been futile. In other words, Wolverine has potential liability not only for October, as indicated in Ms. Harling's letter, but for the 30-day grace period ending November 30, 2007.

an express contract, an implied contract, or under the common law. *Transportation Dep't v. Christensen,* 229 Mich.App 417, 425, 581 NW2d 807 (1998). State Farm relies on a theory of common law indemnification. However, common law indemnification is a tort concept. *See Hardy v. Monsanto Enviro-Chem Systems, Inc.*, 414 Mich. 29, 86, 323 N.W.2d 270 (1982) ("In tort actions, common-law indemnity is an equitable doctrine which developed as an exception to the harsh rule that tortfeasors were not entitled to apportion damages or shift liability between themselves through contribution or indemnification.").[6] State Farm's liability, if any, is grounded in its contract with Plaintiff, not in any tort liability of Wolverine. The doctrine of common law indemnity simply does not apply.

The doctrine of equitable subrogation is a different matter. Michigan defines equitable subrogation as follows:

> "[E]quitable subrogation is a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other. It is well-established that the subrogee acquires no greater rights than those possessed by the subrogor, and that the subrogee may not be a mere volunteer."

*Auto-Owners Ins. Co. v. Amoco Production Co.,* 468 Mich. 53, 59, 658 NW2d 460 (2003) (citation and quotation marks omitted). In addition, "[t]he doctrine of subrogation arises only in favor of one who pays the debt of another, and not in favor of one who pays the debt in performance of his own covenants. This right never follows a primary liability" and "is never allowed in favor of a person who is himself personally liable for the debt he discharges by payment." *Michigan Hosp. Service v. Sharpe,* 339 Mich. 357, 373, 374, 63 NW2d 638 (1954) (citation and quotation marks omitted).

Plaintiff's insurance contract with State Farm provided for coordinated benefits, whereby Plaintiff's health insurer, not State Farm, would be primarily liable within the limits of the health

---

[6] The Court further stated, "Common-law indemnity has been said to be available to a tortfeasor where liability has been imposed by reason of his or her relationship to another tortfeasor, where liability is imposed simply by operation of law, where the tortfeasor is free from personal fault or causal negligence, or where the tortfeasor seeking indemnity is merely guilty of "passive" negligence. *Id.* at 294-95.

insurance policy. Thus, if Plaintiff's COBRA coverage had not lapsed at the time of her surgeries, COBRA, not State Farm would pay. In the event that State Farm is found liable on the underlying no-fault claim, it will arguably be required to pay the debt the Plaintiff owes to Beaumont Hospital or whatever other medical providers have treated her. That being the case, State Farm would be equitably subrogated to the rights and remedies the Plaintiff has against Wolverine, specifically her claim of promissory estoppel.[7] For this reason, Wolverine's motion for summary judgment on State Farm's promissory estoppel/equitable subrogation claim should be denied.[8]

### B. Basic Cobra's Motion [Doc. #75]

Plaintiff Schafer has dismissed her claims against Basic Cobra with prejudice. The only claim remaining against Basic Cobra is State Farm's counter-claim, which is premised on it being subrogated to Plaintiff's rights and remedies.

Having dismissed, Plaintiff has no rights and remedies against Basic Cobra. And as to the merits of any promissory estoppel claim, there is no evidence that Basic Cobra made a promise to Plaintiff or to anyone else that COBRA benefits would be reinstated. Finally, State Farm has not filed a response to Basic Cobra's motion for summary judgment.

Therefore, Basic Cobra's motion should be granted.

---

[7] Because State Farm would be subrogated to only those rights and remedies that Plaintiff herself would have against Wolverine, State Farm's counter-claim for breach of implied contract must be dismissed.

[8] Assuming the survival of (1) Plaintiff's claim for no-fault benefits against State Farm, (2) Plaintiff's claim of promissory estoppel against Wolverine, and (3) State Farm's claim of promissory estoppel through equitable subrogation against Wolverine, the possible outcomes are as follows:

-If Plaintiff prevails against State Farm but not Wolverine, State Farm pays her medical bills.

-If Plaintiff prevails against Wolverine but not State Farm, Wolverine pays her medical bills.

-If Plaintiff prevails against both State Farm and Wolverine, and State Farm prevails on its counter-claim against Wolverine, Wolverine pays.

-If Plaintiff loses to both State Farm and Wolverine, she pays.

### IV. CONCLUSION

I recommend as follows:

1. That Wolverine's Motion for Summary Judgment against State Farm [Doc. #52] be GRANTED IN PART AND DENIED IN PART, specifically GRANTED as to State Farm's claim based on promissory estoppel through equitable subrogation, and DENIED as to all other claims.

2. That Wolverine's Motion for Summary Judgment against Plaintiff [Doc. #52] be GRANTED IN PART AND DENIED IN PART, specifically, DENIED as to Plaintiff's claim based on promissory estoppel, and GRANTED as to all other claims.

3. That Basic Cobra's Motion for Summary Judgment [Doc. #75] be GRANTED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: March 3, 2011

**CERTIFICATE OF SERVICE**

I hereby certify on March 3, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on March 3, 2011: **None.**

                                                s/Michael E. Lang
                                                Deputy Clerk to
                                                Magistrate Judge R. Steven Whalen
                                                (313) 234-5217